**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

STATE OF NEW MEXICO, MICHELLE LUJAN GRISHAM, in her official capacity as Governor of the State of New Mexico, THE NEW MEXICO DEPARTMENT OF HOMELAND SECURITY AND EMERGENCY MANAGEMENT, and THE NEW MEXICO ENERGY, MINERALS AND NATURAL RESOURCES DEPARTMENT,

*Plaintiffs*,

v.

FEDERAL EMERGENCY MANAGEMENT AGENCY,

and

CAMERON HAMILTON, Administrator of the Federal Emergency Management Agency, in his official capacity,

and

JOSE BAQUERO, Former Director of the Hermit's Peak/Calf Canyon Claims Office, in his official capacity,

and

ROBERT FOGEL, Interim Operations Director of the Hermit's Peak/Calf Canyon Claims Office, in his official capacity,

*Defendants*.

Civil Action No.: ________________________

**<u>COMPLAINT FOR JUDICIAL REVIEW</u>**

## INTRODUCTION

1. Plaintiffs bring this action for judicial review of the Federal Emergency Management Agency's ("FEMA") final decision denying the New Mexico Energy, Minerals and Natural Resources Department's ("EMNRD") Claim No. 18822, Proof of Loss No. 020268, under the Hermit's Peak/Calf Canyon Fire Assistance Act ("HPFAA" or the "Act"), Pub. L. No. 117-180, div. G, §§ 101-104, 136 Stat. 2114, 2168-74 (2022).

2. Congress enacted the HPFAA to compensate victims of the Hermit's Peak/Calf Canyon Fire (the "Fire"), a wildfire started by the United States Forest Service that became the largest wildfire in New Mexico history. HPFAA § 102(a)(10), (b), 136 Stat. at 2169.

3. The Fire destroyed or severely damaged forest resources across Tribal and non-Federal lands. Reforestation to address the damage requires millions of seedlings adapted to Northern New Mexico conditions, but existing regional nursery capacity is inadequate to supply them within a reasonable recovery period.

4. On April 23, 2024, EMNRD submitted a Proof of Loss seeking $68,133,686 for Phase 1 construction and expansion of the New Mexico Reforestation Center ("Center"). The claim sought the upstream seed collection, processing, storage, nursery, greenhouse, equipment, and production capacity required to accomplish reforestation on lands impacted by the Fire.

5. FEMA, through its Office of Hermit's Peak/Calf Canyon Fire Claims ("Claims Office"), denied the claim in a Letter of Determination ("LOD") dated June 23, 2025, and supporting determination memorandum transmitted June 23, 2025.

6. EMNRD filed an administrative appeal on October 15, 2025.

7. On September 23, 2026, FEMA issued Administrative Appeal Decision No. 26-098, again denying the claim. FEMA concluded that EMNRD had not shown a Fire-caused injury because the Center itself was not damaged by the Fire and was conceived before the Fire. FEMA also concluded that 44 C.F.R. § 296.21(c)(1), which addresses repair or replacement of Fire-damaged real property, independently bars compensation for new or expanded infrastructure.

8. FEMA's decision misinterprets EMNRD's claim. EMNRD does not contend that the Center burned. The State's claimed loss is the extraordinary, Fire-caused cost of producing the seedlings necessary to reforest affected Tribal and non-Federal lands, a need that existing supply and production capacity cannot satisfy within a reasonable recovery period. FEMA's decision renders the remedy ineligible and recovery impossible. It is also contrary to the Act.

9. The Act expressly makes "a cost of reforestation or revegetation on Tribal or non-Federal land" an allowable component of property loss when not covered by another federal program. HPFAA § 104(d)(4)(A)(v), 136 Stat. at 2171. It also authorizes "any other loss that the Administrator determines to be appropriate for inclusion as loss of property." *Id.* § 104(d)(4)(A)(vi).

10. FEMA applied the wrong regulatory provision. Section 296.21(c)(1) governs compensation for damage to or destruction of real property and its contents. Section 296.21(c)(2), by contrast, separately provides for compensatory damages for the replacement of destroyed trees and landscaping. EMNRD's claim arises from the Act's express authorization of reforestation costs and must be evaluated under that distinct reforestation framework, rather than categorically rejected under the limitations applicable to reconstruction of damaged structures.

11. FEMA's interpretation also conflicts with material evidence in the administrative record. FEMA coordinated with the State concerning development of the claim, and FEMA's retained actuary identified the Center as a government project with an estimated claim liability of approximately $70 million. Although the actuarial forecast did not constitute an eligibility determination or award, the final decision did not meaningfully address this evidence before incorrectly and categorically characterizing the claim as prospective capacity expansion.

12. Plaintiffs assert three causes of action: judicial review under HPFAA § 104(i)(1) and violation of the HPFAA and 44 C.F.R. Part 296 (Count I); arbitrary, capricious, contrary-to-law, and excess-of-authority agency action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A) and (C) (Count II); and ultra vires agency action (Count III).

**PARTIES, JURISDICTION, AND VENUE**

13. Plaintiff State of New Mexico ("State") is a sovereign state of the United States of America. The State is represented by and through the New Mexico Department of Justice, as the primary legal advisor and counsel to the Executive Branch and the State's agencies.

14. Plaintiff Michelle Lujan Grisham is the duly elected Governor of the State of New Mexico and is suing in her official capacity as Governor. Governor Grisham is represented by and through the Chief General Counsel for the Office of the Governor and the New Mexico Department of Justice.

15. Plaintiff New Mexico Department of Homeland Security and Emergency Management ("DHSEM") is an executive agency of the State of New Mexico, located at 13 Bataan Blvd., Santa Fe, New Mexico 87508. DHSEM has statutory authority under NMSA 1978, § 9-28-

5 to coordinate all emergency management activities and programs within the State. DHSEM is represented by and through the New Mexico Department of Justice.

16. Plaintiff EMNRD is an executive agency of the State of New Mexico, located at 1220 South St. Francis Drive, Santa Fe, New Mexico 87505. EMNRD is charged by New Mexico law with conserving forest resources, conducting post-fire rehabilitation and reforestation of burned areas, and establishing and supporting nurseries. *See* NMSA 1978, §§ 68-2-6, 68-2-8(A)(5), (9) (2024). EMNRD is represented by and through the New Mexico Department of Justice.

17. Defendant FEMA is an executive agency of the United States within the Department of Homeland Security. The HPFAA directs FEMA to receive, process, and pay claims for injuries resulting from the Fire. HPFAA § 104(a)(2).

18. Defendant Cameron Hamilton is the Administrator of FEMA and is sued in his official capacity. The Administrator is responsible for administration of the HPFAA unless those duties are delegated to an Independent Claims Manager. HPFAA § 104(a)(3).

19. Defendant Jose Baquero is the Former Director of the Hermit's Peak/Calf Canyon Claims Office and is sued in his official capacity. As Former Director of the Claims Office, Defendant Baquero signed the final agency decision that is at issue in this matter as the Administrator pursuant to delegated authority under HPFAA § 104(a)(3).

20. Defendant Robert Fogel is the current Interim Operations Director of the Hermit's Peak/Calf Canyon Claims Office and is sued in his official capacity. As Interim Operations Director of the Claims Office, Defendant Fogel may act as the Administrator pursuant to delegated authority under HPFAA § 104(a)(3).

21. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States and under HPFAA § 104(i)(1), 136 Stat. at 2173, because Plaintiffs are aggrieved by a final decision of the FEMA Administrator under the Act. The APA supplies an additional waiver of sovereign immunity for the nonmonetary relief sought under 5 U.S.C. §§ 702 and 706.

22. Defendants are subject to the personal jurisdiction of this Court.

23. Venue is proper under 28 U.S.C. § 1391(e)(1)(B)-(C) because Defendants include a federal agency and federal officials, a substantial part of the events and affected property are in New Mexico, and Plaintiffs reside in this District. HPFAA § 104(i)(1) specifically places judicial-review actions in the United States District Court for the District of New Mexico.

## FACTUAL BACKGROUND

### The Fire and Congress's Reforestation Remedy

24. On April 6, 2022, the United States Forest Service initiated a prescribed burn on federal land in the Santa Fe National Forest in San Miguel County, New Mexico. The prescribed burn escaped control, resulting in a wildfire that spread to adjacent non-federal lands.

25. On April 19, 2022, the Calf Canyon Fire emerged from a pile burn holdover in the same area. On April 27, 2022, the Hermit's Peak Fire and the Calf Canyon Fire merged, forming the Hermit's Peak/Calf Canyon Fire. The Fire is the largest wildfire in New Mexico history, burning over 341,000 acres, destroying 903 structures, forcing thousands of residents to evacuate, and causing catastrophic damage in the southern Sangre de Cristo Mountains, in San Miguel, Mora, and Taos counties.

26. On September 30, 2022, Congress enacted and the President signed the HPFAA, Pub. L. No. 117-180, Div. G, 136 Stat. 2168 (2022). Congress found that "the United States should compensate the victims of the Hermit's Peak Fire." HPFAA § 102(a)(10).

27. The Act's stated purposes are "to compensate victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire; and…to provide for the expeditious consideration and settlement of claims for those injuries." HPFAA § 102(b).

28. Under the Act, there is established within FEMA a Claims Office that "shall receive, process, and pay claims in accordance with this Act." HPFAA § 104(a)(2).

29. Under the Act, the term "Administrator"' means (A) the Administrator of FEMA; or (B) if a Manager is appointed under section 104(a)(3), the Manager. HPFAA § 103(1).

30. Under the Act, the term "Manager" means an Independent Claims Manager appointed under section 104(a)(3), which allows for the FEMA Administrator to appoint an Independent Claims Manager to head the Claims Office and assume the duties of the Administrator under the Act. HPFAA §§ 103(6) and 104(a)(3).

31. Under the Act, an "injured person" includes States and other non-Federal entities that suffered injury resulting from the Fire. HPFAA § 103(4).

32. The Act describes allowable damages for loss of property, business loss, and financial loss. HPFAA, § 104(d)(4)(A), (B), and (C).

33. The Act expressly authorizes compensation for loss of property to include and as applicable to this matter, "a cost of reforestation or revegetation on Tribal or non-Federal land, to the extent that the cost of reforestation or revegetation is not covered by any other Federal

program," and "and any other loss the Administrator determines to be appropriate for inclusion as loss of property." HPFAA, § 104(d)(4)(A)(v), (vi).

34. The Act expressly confirms that, "except as otherwise provided in this Act, the laws of the State of New Mexico shall apply to the calculation of damages under subsection (d)(4)." HPFAA § 104(c)(2).

35. The Act requires the Administrator to promulgate and publish regulations for the processing and payment of claims under the Act. HPFAA § 104(f)(1).

36. On August 29, 2023, FEMA published final regulations implementing the HPFAA at 44 C.F.R. Part 296. The promulgated regulations include as "Loss of property," including confirmation that "Compensatory damages may be awarded for an uninsured or underinsured property loss, a decrease in the value of real property, damage to physical infrastructure, cost resulting from lost subsistence, **cost of reforestation or revegetation not covered by any other Federal program, and any other loss that the Administrator determines to be appropriate for inclusion as a loss of property**." 44 C.F.R. § 296.21(c) (emphasis added).

37. The regulations further confirm that eligible loss of property damages include compensatory damages for the cost of replacement of destroyed trees and landscaping. 44 C.F.R. § 296.21(c)(2).

38. The Fire burned more than 340,000 acres and caused widespread destruction in Northern New Mexico.

39. The United States accepted responsibility for the Fire and the damages caused by it, and Congress enacted the HPFAA to compensate victims and provide expeditious consideration and settlement of claims. HPFAA § 102.

**Allowable Damages Resulting from Eligible Reforestation**

40. The Fire caused catastrophic loss of forest resources on Tribal and non-Federal lands. EMNRD estimated that approximately 17.6 million seedlings would be required for reforestation and recovery of Fire-impacted lands.

41. Reforestation requires more than funding the purchase or planting of individual trees. It requires collection of appropriate seed, seed processing and storage, propagation, nursery and greenhouse operations, production of planting stock adapted to the affected sites, distribution, planting, maintenance, monitoring, and, where necessary, replanting.

42. Congress expressly identified "a cost of reforestation or revegetation on Tribal or non-Federal land" as compensable property loss to the extent not covered by another federal program. HPFAA § 104(d)(4)(A)(v).

43. The Act defines an "injured person" to include a state or other non-Federal entity that suffered injury resulting from the Fire. HPFAA § 103(4)(B). It does not state that a governmental claimant must own the burned trees or must have suffered physical damage to a preexisting governmental facility.

44. The Act directs FEMA to determine only whether the claimant is an injured person, whether the claimed injury resulted from the Fire, whether the claimant is otherwise eligible, and whether sufficient funds are available and, if so, the amount to be allowed and paid. HPFAA § 104(d)(1)(B).

**EMNRD's Statutory Role and Existing Reforestation Capacity**

45. New Mexico law designates EMNRD's Forestry Division as the State's agent to enter contracts and cooperative agreements and take actions necessary to carry out the Forest

Conservation Act and federal cooperative-forestry laws. NMSA 1978, § 68-2-6.

46. New Mexico law makes the EMNRD Forestry Division responsible for conserving forests and forest resources and authorizes it to conduct post-fire slope stabilization, erosion control, riparian restoration, seeding, and reforestation of burned areas, and to establish and support nurseries. NMSA 1978, § 68-2-8(A)(1), (5), (9).

47. Before the Fire, the State and university partners had begun organizing the New Mexico Reforestation Center as part of a broader statewide reforestation strategy. The existing John T. Harrington Forestry Research Center in Mora produced approximately 300,000 seedlings annually. Ex. 2, 1/7/2022 Master Participating Agreement; Ex. 3, 1/10/2022 EMNRD Announcement.

48. The fact that the State recognized a pre-Fire reforestation need does not eliminate the distinct Fire-caused surge. The Fire created a site-specific need of extraordinary scale, requiring production dedicated to restoration of the burn scar in addition to ordinary regional demand.

49. At the existing annual production level of approximately 300,000 seedlings, producing 17.6 million seedlings would take more than fifty years, even assuming all existing production could be devoted exclusively to recovery from this Fire.

**Development and Submission of Claim No. 18822**

50. FEMA's Claims Office and State officials discussed the Center claim in meetings and technical workshops during March and April 2024.

51. On April 23, 2024, in accordance with 44 C.F.R. § 296.10, EMNRD submitted Proof of Loss No. 020268 under Claim No. 18822 seeking $68,133,686 for Phase 1 of the Center. Ex. 1, 4/23/2024 Proof of Loss No. 020268.

52. The claimed Phase 1 costs included the administrative building, laboratories, seed-bank building, temporary housing, equipment storage, mechanical and electrical systems, common spaces, greenhouses, site improvements, architectural and engineering services, construction, land, equipment, and supplies.

53. EMNRD explained that the claim was limited to the facility and production inputs necessary to expand seedling capacity. Separate future phases for operations, research, workforce development, and education were not included in the $68,133,686 amount contested here.

54. At an April 30, 2024 workshop, representatives from DHSEM and EMNRD explained the seedling-distribution process, landowner coordination, monitoring, multiple plantings where needed, the project timeline, and safeguards against duplication. DHSEM and EMNRD advised that Fire-affected individuals would not be charged for seedlings. Ex. 4, April 2024 State Claims Workshop Brief.

55. EMNRD also identified other federal and State funding for the Center. EMNRD's claim sought only the uncompensated portion of the Fire-caused reforestation cost and remained subject to FEMA's statutory obligation to prevent duplicate compensation.

56. On October 16, 2024, FEMA's retained actuary issued the 2024 Actuarial Report of the Claim Liability Forecast Estimate. Under "Government Infrastructure and Projects," the report stated that the actuary had been informed of projects the Claims Office anticipated paying and listed the Reforestation Center with a $70 million liability, referencing Claim No. 18822.

October 16, 2024 Actuarial Report of the Claim Liability Forecast Estimate. Ex. 5, 10/16/2024 Actuarial Report.

57. The actuarial report did not constitute an award, but it is material administrative-record evidence that FEMA personnel treated the Center as a specific, quantifiable government recovery liability rather than as an inherently non-compensable concept.

**FEMA's Initial Denial and EMNRD's Administrative Appeal**

58. FEMA issued a Letter of Determination dated June 17, 2025 and a supporting determination memorandum transmitted June 23, 2025 ("Letter of Determination"), denying the claim. Ex. 6, 6/17/2025 Letter of Determination and 6/23/2025 Determination Memorandum.

59. The Letter of Determination stated that EMNRD had not identified damage to its own structures, facilities, land, or equipment; that the Center did not exist before the Fire; that its function was not solely related to this Fire; and that the Act does not authorize compensation to build capacity.

60. The Letter of Determination also asserted that payment would duplicate parcel-level reforestation compensation to individual claimants and local governments.

61. Pursuant to 44 C.F.R. § 296.41, on October 15, 2025, EMNRD filed a Notice of Appeal ("Appeal"). Ex. 7, 10/15/2025 EMNRD Administrative Appeal.

62. In the Appeal, EMNRD explained that it did not contend the Center itself had been damaged or destroyed by the Fire. Rather, it sought compensation for the Fire-caused cost of reforestation, including the production inputs necessary to make appropriate seedlings available for affected lands.

63. EMNRD further explained in the Appeal that large-scale seedling production and parcel-level planting are different components of reforestation. The Center's contribution is upstream and distinct from parcel-level awards. Individual awards may pay for landowner-specific treatment or planting, but those awards cannot produce adapted seedlings that do not exist in the market. Production capacity is not paid to households and was not shown to be eligible under another federal program.

64. In the Appeal, EMNRD cited the Act's separate authorization for reforestation costs, FEMA's reforestation policy recognizing seed collection, planting, maintenance and monitoring activities, New Mexico's assignment of reforestation and nursery responsibilities to EMNRD, and FEMA's own actuarial treatment of the Center.

65. EMNRD also showed that the claim was tailored to the Fire-caused production surge. The existence of a pre-Fire statewide strategy did not eliminate the additional costs caused by the Fire or convert those costs into ordinary State obligations.

**FEMA's September 23, 2026 Appeal Decision**

66. On September 23, 2026, FEMA issued Administrative Appeal Decision No. 26-098 ("Appeal Decision") denying the Appeal in full. Ex. 8, 9/23/2026 Administrative Appeal Decision No. 26-098.

67. The Appeal Decision acknowledged that the Act authorizes compensation for actual compensatory damages suffered as a result of the Fire and that the issue was whether construction or expansion costs constituted compensable damages resulting from the Fire.

68. In the Appeal Decision, FEMA concluded that the Center originated before the Fire as part of an independent statewide forestry initiative, relying on evidence that the project was

contemplated in the 2020 New Mexico Forest Action Plan and a January 2022 Memorandum of Agreement. FEMA further concluded that, although the Fire may have increased the need for the Center's activities, the Fire did not create the Center itself or transform construction into compensable loss.

69. In the Appeal Decision, FEMA characterized the claimed costs as "prospective expansion of operational capacity intended to meet future reforestation needs" rather than compensation for an actual Fire-caused loss.

70. FEMA further stated in the Appeal Decision that increased demand for governmental services, standing alone, does not show a compensable injury. FEMA then determined that even if EMNRD established a Fire-caused injury, the costs were independently ineligible under 44 C.F.R. § 296.21(c)(1) because that provision authorizes only repair or replacement of Fire-damaged real property to a condition comparable to its pre-Fire design and size.

71. The Appeal Decision did not apply or meaningfully analyze § 296.21(c)(2), the regulation's separate reforestation provision. Nor did it explain why Congress's express authorization of the "cost of reforestation" excludes seed and seedling production when ordinary supply is insufficient.

72. The Appeal Decision also did not resolve the evidentiary significance of FEMA's own actuarial report, which identified the Center as a forecast government-project liability, or FEMA's extensive pre-denial coordination concerning the claim.

73. The Appeal Decision did not determine that any identified line item duplicated a specific payment from another source. Instead, it treated the entire claim as categorically ineligible.

74. The Appeal Decision advised EMNRD that it had 60 days from the date of the decision—or until November 22, 2026—to request arbitration or file a civil action for judicial review, else the Appeal Decision would become final, conclusive, and binding.

75. The Appeal Decision further advised that FEMA has suspended its arbitration process pending review of this Court's ruling in *Old Wood v. FEMA*, et al., No. 1:24-cv-01142-JB-JFR, which held that portions of the Hermit's Peak/Calf Canyon Claims Office arbitration process are invalid.

76. Plaintiffs are aggrieved by the Appeal Decision and timely bring this civil action for judicial review within the 60-day statutory window established by HPFAA § 104(i)(1).

**COUNT I**

**(Judicial Review Under HPFAA § 104(i)(1), and Violation of the HPFAA and 44 C.F.R. Part 296)**

77. All preceding paragraphs are realleged and incorporated by reference.

78. FEMA, and within it the Claims Office, is the agency directed to "receive, process, and pay" claims submitted in accordance with the Act. HPFAA § 104(a)(2).

79. The Administrator of FEMA, and if so delegated, the Manager of the Claims Office, is designated the Administrator of funding provided under the Act. HPFAA § 103(1); 44 C.F.R. § 296.4.

80. The September 23, 2026 Appeal Decision issued by the Claims Office constitutes a final agency action subject to Judicial Review pursuant to the HPFAA. HPFAA § 104(i)(1).

81. The Court shall hear the matter on the record made before the Administrator. HPFAA § 104(i)(2).

82. The decision of the Administrator shall be upheld only if it is "supported by substantial evidence on the record considered as a whole." HPFAA § 104(i)(3).

83. The HPFAA applies to EMNRD's Claim No. 18822.

84. Allowable damages under the Act and the promulgated regulations include "a cost of reforestation or revegetation on Tribal or non-Federal land, to the extent that the cost of reforestation or revegetation is not covered by any other Federal program," and "any other loss that the Administrator determines to be appropriate for inclusion as loss of property." HPFAA § 104(d)(4)(A)(v), (vi); 44 C.F.R. § 296.21(c).

85. The proposed scope of work under Proof of Loss No. 020268 under Claim No. 18822 for Phase 1 of the Center, including costs for the administrative building, laboratories, seed-bank building, temporary housing, equipment storage, mechanical and electrical systems, common spaces, greenhouses, site improvements, architectural and engineering services, construction, land, equipment, and supplies, falls within the allowable damages covered under the Act, regulations, and FEMA policy guidance.

86. The HPFAA provides that "[e]ach injured person shall be eligible to receive from the United States compensation for injury suffered by the injured person as a result of the Hermit's Peak/Calf Canyon Fire." HPFAA § 104(a)(1).

87. FEMA's prerequisite for compensation under 44 C.F.R. § 296.20 requires that the claimant be an "injured person" who suffered "injury" from the Fire.

88. The Act mandates "actual compensatory damages measured by injuries suffered." HPFAA § 104(c)(3)(A).

89. The Act expressly excludes specified categories of damages, including prejudgment interest and punitive damages, but does not categorically exclude reasonable, causally related reforestation costs merely because those costs involve construction or expanded production capacity. This Court has previously held that, "the explicit exclusion of prejudgment interest and punitive damages, but nothing else, indicates that the Court should not read into the statute any additional, unstated exclusions." *Dolan v. FEMA*, 760 F.Supp.3d 1200, 1252 (D.N.M. 2024).

90. The Act provides that "the laws of the State of New Mexico shall apply to the calculation of damages," and FEMA's promulgated regulations confirm that "the Laws of the State of New Mexico will apply to the calculation of damages." HPFAA § 104(c)(2); 44 C.F.R. § 296.21(a).

91. EMNRD is a state agency that suffered an injury and therefore is an "injured person" under HPFAA § 103(4)(B) and 44 C.F.R. § 296.4.

92. EMNRD's Claim No. 18822 for Phase 1 of the Center is based on costs for injuries directly resulting from the Fire's destruction of over 340,000 acres and widespread destruction in Northern New Mexico and the resulting allowable damages in the form of the cost of reforestation, which EMNRD is authorized under the laws of the State of New Mexico to address, as calculated pursuant to laws of the State of New Mexico.

93. The Claims Office Appeal Decision violated the Act by denying compensation for the distinct Fire-caused cost of reforestation because the Act contains no facility-damage prerequisite for that category of loss.

94. The Claims Office Appeal Decision violated the Act by treating the pre-Fire conception of the Center as dispositive without determining whether, and to what extent, the Fire created additional, uncompensated reforestation costs beyond the State's pre-Fire plans.

95. The Claims Office Appeal Decision violated the Act and applicable regulations by applying § 296.21(c)(1), the general repair-and-replacement provision, as an independent bar to a claim arising under the separate reforestation authority in HPFAA § 104(d)(4)(A)(v) and 44 C.F.R. § 296.21(c)(2).

96. Basic interpretive principles require effect to be given to the specific reforestation provision rather than allowing the general repair-and-replacement provision to nullify it. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).

97. FEMA's position as expressed in the Claims Office Appeal Decision prevents meaningful consideration of Congress's express authorization of reforestation costs whenever the evidence shows that accomplishing reforestation requires production inputs beyond the replacement or planting of individual trees. Courts avoid interpretations that render statutory language ineffective or superfluous. *Corley v. United States*, 556 U.S. 303, 314 (2009).

98. The Claims Office Appeal Decision regarding Claim No. 18822 for Phase 1 of the Center is not supported by substantial evidence on the record considered as a whole because it disregards evidence of Fire-specific demand, inadequate ordinary supply, EMNRD's statutory responsibility and resulting financial obligation, the distinction between production and parcel-level planting, and FEMA's actuarial identification of the Center as an estimated government-project claim liability.

99. Plaintiffs seek judicial review and an order modifying or setting aside the Claims Office Appeal Decision denying Claim No. 18822 for Phase 1 of the Center as unsupported by substantial evidence and in violation of the HPFAA and 44 C.F.R. Part 296.

**COUNT II**

**(Arbitrary, Capricious, Contrary-to-Law, and Excess-of-Authority Agency Action Under the APA, 5 U.S.C. § 706(2)(A) and (C))**

100. All preceding paragraphs are realleged and incorporated by reference.

101. The APA requires a reviewing court to hold unlawful and set aside agency action that is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations. 5 U.S.C. § 706(2)(A), (C).

102. Agency action is arbitrary and capricious when the agency relies on factors Congress did not intend, entirely fails to consider an important aspect of the problem, offers an explanation counter to the evidence, or reaches a conclusion that cannot be ascribed to a difference in view or agency expertise. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Automobile Insurance Co.*, 463 U.S. 29, 43 (1983).

103. Following the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412-13 (2024), the Court exercises independent judgment on questions of statutory interpretation and need not defer to FEMA's reading of the HPFAA.

104. As this Court recognized in *Dolan v. FEMA*, 760 F.Supp.3d 1200 (D.N.M. 2024), the HPFAA must be interpreted through *de novo* review of legal questions, and the Act's remedial purpose requires liberal interpretation to advance its compensatory objectives.

105. FEMA acted contrary to law by importing into the reforestation provision a requirement that the claimant own a Fire-damaged facility.

106. FEMA failed to consider the practical and statutory relationship between parcel-level reforestation awards and adequate seedling supply, an important aspect of whether the requested costs are part of the cost of reforestation.

107. FEMA failed to apply the correct regulatory subsection and failed to explain how § 296.21(c)(1) can categorically override § 296.21(c)(2).

108. FEMA failed to evaluate whether and to what extent the Fire caused incremental production costs beyond the pre-Fire Center concept. Instead, FEMA treated the existence of pre-Fire planning as dispositive and bypassed the causation and damages analysis required by the Act.

109. FEMA failed to identify a specific duplicative payment or other federal program that covers the claimed production inputs. To the extent duplication remains a concern, FEMA must calculate and deduct actual overlapping compensation rather than deny an analytically distinct category by assumption.

110. FEMA failed to reconcile its final position with evidence that FEMA officials participated in development of the claim and that FEMA's retained actuary listed the Center as an anticipated government-project liability.

111. FEMA's treatment of the increased demand for governmental services as categorically insufficient to establish compensable injury is irreconcilable with Congress's express inclusion of States as potential injured persons and its express authorization of reforestation costs that may be incurred by governmental entities responsible for accomplishing reforestation.

112. FEMA acted contrary to law by treating the prospective timing of the claimed expenditures as categorically inconsistent with actual compensatory damages, without determining whether the expenditures reasonably measure a present, Fire-caused reforestation loss. The Act

requires compensation for actual injuries resulting from the Fire; it does not state that every allowable reforestation cost must already have been paid before FEMA may approve it. *See* HPFAA § 104(c)(3)(A).

113. FEMA's denial harms Plaintiffs by depriving them of the properly claimed allowable damages that are required for the cost of reforestation necessitated by the Fire.

**COUNT III**

**(Ultra Vires Agency Action)**

114. All preceding paragraphs are realleged and incorporated by reference.

115. A federal agency acts *ultra vires* when it exceeds the authority Congress delegated to it. *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013).

116. In adjudicating a claim, Congress directed FEMA to determine whether the claimant is an injured person, whether the claimed injury resulted from the Fire, whether the claimant is otherwise eligible, and, if funds are available, the amount to be allowed and paid. HPFAA § 104(d)(1)(B).

117. FEMA exceeded its statutory authority by imposing categorical restrictions not contained in the Act, including that compensable reforestation costs must involve repair or replacement of a pre-Fire facility owned by the claimant and may not include production capacity necessary to address a demonstrated Fire-caused reforestation need.

118. FEMA also exceeded its authority by using 44 C.F.R. § 296.21(c)(1) to nullify the separate statutory and regulatory authorization for reforestation costs as specifically contained in HPFAA § 104(d)(4)(A)(v) and 44 C.F.R. § 296.21(c)(2).

119. FEMA's ultra vires conduct is not entitled to deference and must be set aside because it is contrary to the plain text of the HPFAA and 5 U.S.C. § 706(2)(C), which requires a reviewing court to hold unlawful and set aside agency action found to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

120. Plaintiffs are entitled to an order setting aside the extra-statutory restrictions imposed by FEMA, through the Claims Office Appeal Decision and requiring FEMA to adjudicate Claim No. 18822 using only the statutory criteria Congress established.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that this Court:

1. Modify or set aside the Claims Office Appeal Decision denying Claim No. 18822, in whole or in part, pursuant to HPFAA § 104(i)(1);

2. Declare that the State and its agencies DHSEM and EMNRD qualify as "injured person[s]" under HPFAA § 103(4)(B) and 44 C.F.R. § 296.4;

3. Declare that FEMA may not apply 44 C.F.R. § 296.21(c)(1) as a categorical bar to costs claimed under the separate reforestation authority in HPFAA § 104(d)(4)(A)(v) and 44 C.F.R. § 296.21(c)(2);

4. Declare the financial losses set forth in Claim No. 18822 are rightfully claimed by EMNRD and eligible pursuant to the Act and applicable implementing regulations, HPFAA § 104(d)(4)(C) and 44 C.F.R. § 296.21(e);

5. Declare the amount claimed for damages under Claim No. 18822 is calculated properly pursuant to the laws of the State of New Mexico as required by HPFAA § 104(c)(2) and 44 C.F.R. § 296.21(a);

6. Declare that FEMA's denial of Claim No. 18822 is arbitrary, capricious, an abuse of discretion, not in accordance with law, and not supported by substantial evidence on the record considered as a whole;

7. Award Plaintiffs their costs of suit and reasonable attorneys' fees to the full extent permitted by law; and

8. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted, this 17th day of November, 2026.

OFFICE OF GOVERNOR MICHELLE LUJAN GRISHAM

/s/ Holly Agajanian
Holly Agajanian, Esq.
Chief General Counsel
Special Assistant Attorney General
New Mexico Bar No. 25740
490 Old Santa Fe Trail, Room 400
Santa Fe, NM 87501
Telephone: (505) 476-2210
Email: Holly.Agajanian@exec.nm.gov

NEW MEXICO DEPARTMENT OF JUSTICE

/s/ Wendy Huff Ellard
Wendy Huff Ellard, Esq.
Special Assistant Attorney General
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
Fed. D.N.M. #26-540
Mississippi Bar No. 102601
One Eastover Center
100 Vision Drive
Suite 400
Jackson, Mississippi 39211
Telephone: (601) 969-4681

Facsimile: (601) 592-2405
Email: wellard@bakerdonelson.com

Danielle Mayer Aymond, Esq.
Special Assistant Attorney General
Fed. D.N.M. #26-551
Louisiana Bar No. 33603
II Rivermark Centre
450 Laurel Street
21st Floor
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7039
Facsimile: (225) 343-3612
Email: daymond@bakerdonelson.com

Charles Schexnaildre, Esq.
Special Assistant Attorney General
Fed. D.N.M. #26-545
Louisiana Bar No. 29517
II Rivermark Centre
450 Laurel Street
21st Floor
Baton Rouge, Louisiana 70801
Telephone: (225) 381-7019
Facsimile: (225) 343-3612
Email: cschexnaildre@bakerdonelson.com

Michelle F. Zaltsberg, Esq.
Special Assistant Attorney General
Fed. D.N.M. #26-544
Florida Bar No. 72908
200 South Orange Avenue
Suite 2900
Orlando, Florida 32801
Telephone: (407) 367-5433
Facsimile: (407) 841-0325
Email: mzaltsberg@bakerdonelson.com

***Attorneys for Plaintiffs***